UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:06-cr-90-T-23MAP
            8:07-cv-2315-T-23MAP

KURT LOUIS RHODE
_____/

## REPORT AND RECOMMENDATION

On the steps of the courthouse just before he was to be sentenced for committing child enticement (18 U.S.C. § 2422(b)), Kurt Louis Rhode told his appointed lawyer that he wanted to withdraw the plea he had made three months before pursuant to a negotiated plea agreement with the prosecution. His lawyer counseled against it but left the decision to Rhode. Soon thereafter, Rhode presented himself to the district judge for sentencing. Instead of asking to withdraw his plea, he persisted in his guilty plea and apologized for his conduct (cr. doc. 56 at p. 10).[1] The district judge imposed the minimum allowable sentence – sixty months. Now, Rhode claims in his motion to vacate his judgment and sentence per 28 U.S.C. § 2255 that his defense counsel rendered constitutionally ineffective assistance by not moving to withdraw his plea of guilty as asked. After an evidentiary hearing on the matter, I find that Rhode decided not to withdraw his plea and that in any event no

---

[1] All references to the criminal docket are cited as "cr. doc." References to the civil docket are cited as "doc."

constitutional violation occurred. Therefore, I recommend that Rhode's petition be denied.[2]

*A. Background*

During his September 16, 2006, plea colloquy, Rhode swore that the facts included in his plea agreement were true (cr. doc. 53 at pp. 23-24). Namely, while in an internet chat room, Rhode engaged in sexual conversations with someone who represented herself to be a fourteen-year-old female with the internet moniker of "beachgurlfla." Over the course of their extended conversations, Rhode, who was initially in Michigan when the two began to chat, asked "beachgurlfla" if she wanted to "learn sexually from one my age?"[3] This discourse eventually led to Rhode stating he wanted to meet "beachgurlfla" on January 7, 2006, and have sex. The two made plans to meet, and, accordingly, Rhode showed up in his grey, 1986, Mercedes Benz convertible at the predetermined time and place (the Brandon Mall) where local authorities arrested him.

Rhode informed his assistant federal public defenders in their numerous meetings that he never intended to engage in sex with "beachgurlfla." In fact, he contended he strongly suspected she was not whom she represented herself to be. To explain his January 7 presence at the Brandon Mall, he boldly proclaimed that he drove there to expose the police

---

[2] The district judge, as a consequence of the Eleventh Circuit's order on remand (doc. 26), referred this matter to me with directions to conduct an evidentiary hearing and file a report recommending whether "Rhode was denied the effective assistance of counsel regarding Rhode's request that counsel move to withdraw Rhode's plea." *See* doc. 30.

[3] Rhode was in his late forties.

or some "vigilante" types for lying to him and masquerading as a fourteen-year-old.[4] His attorney fully investigated his assertions, retained a clinical psychologist for an opinion as to Rhode's sexual predilections, and even convened a team to conduct mock direct and cross examinations of Rhode. That exercise laid bare the patent absurdity of his assertions. After thorough consultation with his counsel, Rhode eventually accepted the government's plea offer and elected to plead guilty, a plea he knowingly and voluntarily made before me.

On the morning of his sentencing hearing, which took place three months after his plea, Rhode telephoned the Federal Public Defender's office stating he planned to commit suicide. His lead counsel, Adam Allen, a seasoned defense attorney, discounted the threat and anticipated that Rhode would appear for his sentencing hearing. As Allen suspected, the two met at the courthouse steps. Rhode, however, added a new demand – he wanted to withdraw his plea of guilty. Allen and another assistant federal defender (Moore) cautioned Rhode about the possible consequences. The district judge would likely deny the request as Rhode would not be able to show good cause for a withdrawal.[5] The effort would likely cost

---

[4] It is unclear from the record before me if Rhode had traveled from Michigan to Florida just to meet "beachgurlfla" or if he was already in Florida when the two agreed to meet. From his testimony at the evidentiary hearing, it appears Rhode resided in Lakeland before January 7 and likely traveled the approximate half hour from there to the location of his arrest. Irrespective of the distance Rhode traveled to satisfy his lust or curiosity (or both), Rhode showed up at the appointed place and time. Of course, Rhode never satisfactorily explained to his attorneys (nor to the Court during the evidentiary hearing) what he planned to do when, according to his purported version of the events, he exposed the police.

[5] Once a court accepts a defendant's plea, like here, Fed. R. Crim. P. 11(d)(2) permits a defendant to withdraw the plea before sentencing only if: (a) the court rejects a plea agreement under Rule 11(c)(5); or (b) the defendant shows a fair and just reason for

him his three level downward adjustment for acceptance of responsibility under the sentencing guidelines. In the event the district judge did accept Rhode's request, Rhode would undoubtedly be convicted by a jury and likely face a harsher sentence than under his plea agreement. In the end, Allen unquestionably left the decision to Rhode.

When Rhode appeared before the district judge, he reaffirmed his guilt and apologized to the Court for his behavior. Allen, understandably, did not mention Rhode's earlier notion about withdrawing his plea; neither did Rhode. Rather, Rhode chose the most advantageous path for him, namely, to continue with his plea. The Court then imposed a five-year prison sentence, the minimum legally demanded under the charging statute.

On the eve of the one-year expiration for filing a § 2255 petition, Rhode claimed for the first time that his attorney was constitutionally ineffective for failing to move to withdraw his plea prior to his sentencing. The district judge initially denied the petition. Rhode appealed to the Eleventh Circuit and that court vacated the dismissal order and remanded the matter to the district court with directions that it consider Rhode's claim that "counsel was ineffective for failing to file a motion to withdraw his guilty plea." *See* doc. 26 at p. 2.

---

requesting the withdrawal. A "fair and just" reason requires the court consider these factors: (1) whether the defendant had close assistance of counsel for the plea; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea. *United States v. Brehm,* 442 F.3d 1291, 1298 (11th Cir. 2006). If the first two prongs weigh against the defendant, a court need not "give particular attention" or weight to the last two. *United States v. Gonzalez-Mercado,* 808 F.2d 796, 801 (11th Cir. 1987); s*ee also United States v. Smith,* 336 Fed. Appx. 978, 981 (11th Cir. 2009). Given that the first two factors pointed against Rhode, his counsel competently estimated Rhode's lackluster chances for withdrawal of the plea.

*B. Discussion*

*Strickland v. Washington,* 466 U.S. 668, 687 (1984), gives the measuring stick for evaluating a defendant's ineffective assistance of counsel claim. A defendant must show: (1) counsel's performance fell below an objective standard of performance; and (2) counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Id.* This test, as the Eleventh Circuit has repeatedly said, is not one a defendant easily meets. *Johnson v. Alabama,* 256 F.3d 1156, 1176 (11th Cir. 2001) (citing cases for same proposition). First, courts strongly presume counsel performed reasonably and professionally. In short, Rhode must show "no competent counsel would have" advised him as Allen did. *Id* at 1176-1177 (quoting *Chandler v. United States,* 218 F.3d 1305, 1313-1316 (11th Cir. 2000) (*en banc*)). And, as a reminder to avoid the distorting effects of hindsight, Allen's actions are viewed from Allen's perspective at the time. *Id.*

*Strickland's* standard applies equally to ineffective assistance of counsel claims in guilty-plea settings. *See Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985). But the test for prejudice changes slightly because a valid guilty plea "represents a voluntary and intelligent choice among the alternative courses of action open to a defendant." *Id*. at 56 (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)).[6] In other words, courts realize that a defendant, like anyone else who faces an important, personal decision, will typically apply a risk-analysis

---

[6] In *Alford,* the Court held an accused, if he believes his interests dictate in the face of the evidence, may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime. 400 U.S. at 37-38.

5

approach when evaluating his options. *See, e.g., Tollett v. Henderson,* 411 U.S. 258, 268 (1973) ("A prospect of plea bargaining, the expectation or hope of lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea ….").

But applying this test here necessarily presupposes Rhode *truly* wanted his attorney to argue for the withdrawal of his guilty plea. And accepting this supposition requires me to credit Rhode's testimony, a proposition that I find wholly unacceptable. Simply put, Rhode on the morning of his sentencing hearing wanted to evade the inevitable – his judicial fate. Earlier he proclaimed he planned to kill himself, yet soon thereafter he showed up at the courthouse steps. He then professed he wanted to withdraw his plea, yet he had never mentioned this during the three months after his plea. His attorney, calmly and professionally, recognized Rhode's manipulative behavior and appropriately left the ultimate decision to Rhode. Rhode had protested his innocence before but then abandoned his preposterous defense, signed a plea agreement admitting the essential facts, and pled guilty. If Rhode truly wanted to withdraw his plea, his counsel rightly and accurately surmised Rhode would inform the district judge at the sentencing proceeding. In the end, Rhode's behavior that morning mirrored what Allen had previously observed. Besides, Allen knew Rhode would ultimately decide what Rhode really wanted.[7]

---

[7] A cold transcript does not reveal the nuances of a witness's non-verbal conduct. Suffice to say, having observed Rhode carefully at the evidentiary hearing, it is clear to me that Rhode is no shrinking violet. Bombastic in his language and domineering in his conduct (particularly as revealed by his internet chatter), I am convinced that if he truly wanted to

Because I find that Rhode did not truly want to withdraw his plea of guilty, it is frankly unnecessary to engage in the classic *Strickland* analysis. That said, however, I find Rhode's counsel acted professionally and competently; indeed, a less seasoned attorney might have evaluated Rhode's petulant behavior differently. Counsel's decisions were sound and clearly did not fall below an objective standard of performance. Accordingly, I recommend the district judge deny Rhode's § 2255 motion to vacate his judgment and sentence.

*C. Conclusion*

For the reasons stated, it is hereby recommended that the district judge deny Rhode's motion under 28 U.S.C. § 2255 to vacate his judgment and sentence (doc. 1).

IT IS SO REPORTED at Tampa, Florida on April 26, 2010.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days from the date of its service shall bar an aggrieved

---

withdraw his plea and proceed to a trial, he would have clearly and unequivocally informed the district judge.

party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).


cc: The Hon. Steven D. Merryday
    Counsel of Record